IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JOHN TROST**,<br><br>Plaintiff,<br>v.<br><br>**KENNETH HOTCHKISS, ET AL.,**<br><br>Defendants. | Case No. 2:21-CV-578<br><br>Judge Graham<br><br>Magistrate Judge Vascura |

**OPINION AND ORDER**

Plaintiff John Trost, a former officer and shareholder of Sportco Marketing Co. ('Sportco") brings the present action alleging harm caused by Defendants Kenneth Hotchkiss[1] and Kirk Immens (collectively "Defendants"), fellow shareholders and officers. Trost asserts a variety of claims arising from the parties' business relationship. Pending before the Court is Defendants' motion for summary judgment asserting that Trost's claims are barred by their respective statutes of limitations.

### I.   Background

**A.  Factual Background**

All parties to this suit were, at one time, equal shareholders in Sportco. Trost Dep. at 56:25. Sportco is a sporting goods marketing company founded by Defendants and several other individuals. *Id.* at 96:4-10. At all material times, Defendants were the only founders that remained involved in Sportco. *Id.* Defendant Hotchkiss held the position of president of fall goods and

---

[1] Defendants' counsel filed a suggestion of death on July 5, 2022 notifying Plaintiff and the Court that Kenneth Hotchkiss passed away on May 30, 2022. Doc. 36. A motion for substitution has not yet been filed.

Immes the position of president of spring goods. *Id.* at 16:6-7. Both also served on the salary committee. *Id.* at 85:18-22.

Trost became involved in Sportco and, in 1999, obtained shares of Sportco stock. *Id.* at 59:7-9. His job duties were to manage the sale territories of Minnesota, North and South Dakota, and some of Wisconsin. *Id.* at 121:14-18. In 2008 or 2009, he was given the title vice president of fall goods. *Id.* at 16:8-17. He held this position until his retirement on December 31, 2014. *See id.* at 14:23-24.

**B.  Procedural background**

Plaintiff filed his complaint on February 9, 2021 and his amended complaint on November 15, 2021. He alleges that as a shareholder of Sportco he "was due equal distributions commensurate with those of the Defendants," Amend. Compl. ¶ 17; that the value of his shares for the purposes of his retirement buyout was "based on inaccurate information and misrepresentations of Defendants," Amend. Compl. ¶ 19; and that this misinformation also "devalued or eliminated several years of distributions he was owed as a shareholder," Amend. Compl. ¶ 20. He alleges that between December 2019 and January 2020 he learned that Defendants "withdrew more than $700,000 over the course of their tenure with Sportco," Amend. Compl. ¶ 19; that he was never notified of those payments and that "there were no similar distributions to him as a shareholder." Amend. Compl. ¶ 19. He alleges that Defendants "kept inaccurate and/or false financial records to conceal the unauthorized payments." Amend. Compl. ¶ 20. He asserts claims of breach of fiduciary duty, promissory estoppel, fraud, unjust enrichment, civil theft pursuant to Ohio Rev. Code § 2307.61, and civil conspiracy.

Defendants moved for summary judgment on all six causes of action, asserting they are barred by their respective statutes of limitations. *See generally* Doc. 33. Trost opposes summary

judgment as to all causes of action except promissory estopple and unjust enrichment. Doc. 34 at 1 n. 1.

On August 3, 2022, the Court held a telephonic status conference to permit the parties to elaborate on the issues raised in this motion.

## II. Legal Standards

**A. Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

3

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

**B. Statute of Limitations**

In Ohio, a cause of action generally accrues, and the statute of limitations generally begins to run, at the time of the wrongful act. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 473 (6th Cir. 2013) (citations omitted). One exception to this is the "discovery rule" *Id.* Under the discovery rule, "a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the conduct of the defendant." *Id.* at 470 (quoting *Flagstar Bank, F.S.B. v. Airline Union's Mortg Co.*, 947 N.E.2d 672, 675-76 (2011)). "[P]laintiff's knowledge of his injury should not be measured by the hindsight of the claimant, but the foresight of a reasonable person." *Meeker v. Am. Torque Rod of Ohio, Inc.*, 607 N.E.2d 874, 877 (Ohio App. 1992)

### III. Analysis

**A. Applicable Statutes of Limitations**

The first matter with which this Court must contend is identification of the statute of limitations for each of Trost's remaining claims. The statutes of limitations for three of the four claims are straightforward. The statute of limitations for a breach of fiduciary duty claim depends on the nature of the alleged breach. Generally, a four-year statute of limitations from the date of the misconduct applies. *See Laws. Title Ins. Corp. v. MHD Corp.*, 2010 WL 4157301, *7-8 (Ohio Ct. App. Oct. 22, 2020). However, if the breach sounds in fraud, as is the case here, the discovery rule applies. *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009). Similarly, claims of fraud are subject to a four-year statute of limitations and the discovery rule. Ohio Rev. Code § 2305.09. And the statute of limitations for a civil conspiracy claim is "[t]he applicable statute of limitations for the underlying cause of action . . . ." *Cully v. St. Augustine Manor*, No. 67601, 1995 WL 237129, at *4 (Ohio Ct. App. Apr. 20, 1995).

Determining the statute of limitations for Trost's civil theft claim is a less easy task. Both the length of the statute of limitations and the application of the discovery rule are not fully defined by Ohio law. The length of the statute of limitations depends on whether the civil theft statute, Ohio Rev. Code § 2307.61, creates a liability other than a forfeiture or a penalty. If it does, a six-year statute of limitations applies. *See* Ohio Rev. Code § 2305.07(B). If it does not, a one-year statute of limitations applies. *See* Ohio Rev. Code § 2305.11(A). Further, Ohio Courts have not decided definitively whether the discovery rule applies to claims of civil theft. The Court need not venture into these thorny issues of Ohio law because, as explained below, even assuming civil theft has a six-year statute of limitations and that the discovery rule applies, the claim is time barred here.

B.  **Facts Relevant to Discovery Rule**

Plaintiff's deposition was taken on January 21, 2022 and continued on April 11, 2022. He testified that he was a shareholder and employee of Sportco for 20 years. He also served as a Director and vice president of the company. He retired on December 31, 2014 and sold his shares to the remaining shareholders, the defendants in this case, for the sum of $300,000 pursuant to the terms of a shareholder agreement. In describing his treatment by Defendants during his tenure at Sportco, he repeatedly used the epithet "screwed," a common euphemism for cheated or defrauded.

Plaintiff testified that when he left Sportco in 2014 he believed he had been "screwed" by the defendants:

> A. I knew. I knew how I got screwed, I just couldn't prove it.
>
> Q. How did you know?
>
> A. Oh, real simple. Their lifestyle.
>
> Q. Okay. So when you retired in 2014, did you know you had been screwed by that point?
>
> A. Well, it was our biggest years for the company, 2013 -- or 2022, I believe it was '12, '13 and '14, but I couldn't tell you because they wouldn't give me any financial records as an equal stockholder.
>
> Q. Okay. So those biggest years you knew you had been screwed but just not to what extent; is that fair?
>
> A. That's fair.

Trost Dep. at 36:10-24.

> A. I was 62 years old. We had the biggest years of – in our company and my salary went down. How do you think I felt?

> Q. All right. You felt like you got cheated?
>
> A. Sure.
>
> Q. All right. You felt like Kirk and Hotchkiss were lining their pockets instead of yours and the other shareholders. True?
>
> Mr. Swisher: Objection to form.
>
> A. Sure.

*Id.* at 42:12-21.

> Q. You testified earlier that you knew you were being screwed because you could see their lifestyles, right?
>
> A. Yeah.
>
> Q. And that was your testimony, wasn't it?
>
> A. Yes.
>
> Q. All right. That what, Hotchkiss and Immens were living more lavish lifestyles than you thought they could; is that fair?
>
> A. I don't care how they live their personal life.
>
> Q. Well, what was it about their lifestyles that made you believe you were being screwed?
>
> A. Because I wasn't getting paid equal -- I wasn't getting paid what I should have.

*Id.* at 43:10-23.

> Q. Okay. How much -- how much were you owed for your shareholder stock at the time of your retirement?
>
> A. 300,000.
>
> Q. And were you paid that?

> A. I asked for an updated stock evaluation at that point and I wasn't given it.

*Id.* at 57:23-58:3.

> Q. Yeah. How did – how did Immens' and Hotchkiss' compensation impact your decision to retire?
>
> A. I couldn't put up with it any longer.
>
> Q. Okay. How did it impact your decision to agree to being paid $300,000 for your shares?
>
> A. It didn't.
>
> Q. Right. I mean, you were happy to get – you were happy to get the 300,000 plus interest for your shares. True?
>
> A. No.
>
> Q. No? Have you paid it back?
>
> A. No, but I asked them to disclose if the company -- if our stock went up in value at that point.

*Id.* at 111:5-18.

**C. Application of Discovery Rule**

When Trost left Sportco in 2014, he was convinced that Defendants had cheated him by taking larger salaries even though they were equal shareholders. He attempts to invoke the discovery rule by asserting that he learned for the first time in late 2019 or early 2020 that they had also "awarded themselves hundreds of thousands of dollars in bonuses." *See* Trost Declaration at ¶ 9. This is a distinction without a difference. Trost was well aware that it was the practice at Sportco to award bonuses in addition to salary. He regularly received bonuses himself. *See* Trost Dep. at 87:6-88:1. If Defendants lavish lifestyle caused Trost to believe that Defendants were

8

surreptitiously awarding themselves excessive distributions from Sportco, he well knew it could have taken the form of bonuses or salary or both. He knew he had been cheated when he left in 2014 and in the exercise of reasonable diligence he should have taken further action then.

Trost also knew in 2014 that Defendants refused to provide him Sportco's financial records or reevaluate his Sportco stock. He therefore knew or objectively should have known that Defendants were not making equal disbursements, not notifying him of all disbursements, and not keeping him apprised of Sportco's success or value. In other words, Trost knew or should have known during his employment of all of the factual allegations on which his claims are based. Pursuant to the discovery rule, the statutes of limitations on Trost's claims began to run, at latest, when he retired on December 31, 2014.

Six years, one month, and nine days elapsed between Trost's retirement (December 31, 2014) and the date the complaint was filed (February 9, 2021). As the statutes of limitations for Trost's claims are all six years or less, all of Trost's claims are time barred.

This case is a fitting example of the fairness and logic of barring the litigation of stale claims. Statutes of limitations "ensure fairness to the defendant; encourage prompt prosecution of causes of action; suppress stale and fraudulent claims; and avoid inconveniences caused by delay, including the difficulties of proof in older cases." *Browne v. Artex Oil Co.*, 144 N.E.3d 378, 405 (Ohio 2019) (citation omitted). Sportco is now under new ownership and management. The Defendants no longer have any association with the company. One of them, Hotchkiss, is now deceased and it appears his testimony was not perpetuated by deposition prior to his death. In discovery, counsel had to resort to third-party subpoenas to obtain corporate records from Sportco. In a recent status conference, Trost's counsel expressed concerns about the completeness and accuracy of those records and whether Sportco will make full disclosures.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment, Doc. 33, is **GRANTED**. The clerk is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED**.

                                                  s/ James L. Graham
                                                  JAMES L. GRAHAM
                                                  United States District Judge

DATE: August 9, 2022